# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **WESTERN WATERSHEDS PROJECT, BIODIVERSITY CONSERVATION ALLIANCE, CENTER FOR NATIVE ECOSYSTEMS, OREGON NATURAL DESERT ASSOCIATION, and the SAGEBRUSH SEA CAMPAIGN,**<br><br>Plaintiffs,<br><br>vs.<br><br>**GALE NORTON, Secretary of the Department of the Interior, and UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the United States,**<br><br>Defendants. | Case No. CV 06-00127-S-EJL<br><br><br><br>**MEMORANDUM ORDER** |

Before the Court in the above entitled matter are the Plaintiff's motion for summary judgment and the Defendants' cross-motion for summary judgment. The parties have submitted their briefing on the motions and the matters are now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2)(ii).

**Factual and Procedural Background**

Plaintiff Western Watersheds Project ("Western Watersheds") filed the instant action challenging the "90-Day Finding" issued by the Defendants United States Fish and Wildlife Service and Dirk Kempthorne, Secretary of the Department of the Interior (collectively referred to as "the Service"). (Dkt. No. 1). The 90-Day Finding denied Western Watersheds' Listing Petition ("Petition") seeking protection of the Pygmy Rabbit (*Brachylagus idahoensis*) as an endangered or threatened species under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*.

The Petition presented to the Service seeks designation of the Pygmy Rabbit and its critical habitat for all remaining populations outside the range of the Columbia Basin DPS[1] alleging that the Pygmy Rabbit in the lands subject to this listing is threatened with extinction by the continued destruction and modification of its habitat. (AR 1842). The Service issued a 90-Day Finding concluding that the Petition had failed to provide substantial information to indicate that listing the Pygmy Rabbit may be warranted at this time. (AR 0013). Thereafter, Western Watersheds filed this action seeking reversal of the Service's decision. Both parties have filed motions for summary judgment which the Court now takes up.

**Standard of Review**

I.   Summary Judgment:

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). Federal Rule of Civil Procedure 56 provides, in

---

[1] The Service listed the Columbia Basin Pygmy Rabbit DPS as endangered on March 5, 2003. (AR 1847-48).

pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371, 374 (9th Cir. 1989) (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

II.   Administrative Review:

Compliance with ESA is reviewed under the APA. See Northwest Ecosystem Alliance, et al. v. Rey, et al., 380 F.Supp.2d 1175, 1184 (W.D. Wash. 2005) (citations omitted); 5 U.S.C. § 706(2)(A). The APA provides that an agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Northwest Ecosystem Alliance v. United States Fish and Wildlife Serv., 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting 5 U.S.C. § 706(2)(A)). An agency decision is arbitrary or capricious if: 1) the agency entirely failed to consider an important aspect of the issue; 2) the agency offered an explanation for its decision that was counter to the evidence before it; 3) the agency relied on factors that Congress did not intend for it to consider; or 4) the agency's decision is so implausible that it could not be ascribed to the product of agency

expertise. Northwest Ecosystem, 380 F.Supp.2d at 1184; see also Motor vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983).

"This standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" Northwest Ecosystem, 475 F.3d at 1140 (quoting Independent Acceptance Co. v. California, 204 F.3d 1247, 1251 (9th Cir. 2000) (citations omitted)). In making this determination, the Court "may not consider information outside of the administrative record... and may not substitute our judgment for that of the agency." Id. (citations and quotations omitted). "Our task is simply to ensure that the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." Id. (citations and quotations omitted); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (The reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment."). "Within this narrow review, [the court] cannot substitute [its] judgment for that of the [agency], but instead must uphold the agency decisions so long as the agencies have 'considered the relevant factors and articulated a rational connection between the facts found and the choice made." Selkirk Conservation Alliance v. Forsgren, 336 F.3d 944, 954 (9th Cir. 2003) (citation omitted).

## Analysis

The ESA was enacted "to provide a program for the conservation of...endangered species and threatened species" and "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). Whether a particular species should be listed as either "endangered" or "threatened" is determined by the process set forth in Section 4 of the ESA, 16 U.S.C.

§ 1533.[2] This listing may occur upon the Secretary's own initiative or in response to a petition filed by an interested person.[3] 16 U.S.C. § 1533(b)(3)(A). Where such a petition is filed, the Service must "[t]o the maximum extent practicable, within 90 days after receiving the petition of an interested person...make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). "Substantial information" is the "amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b). It is the petitioner's burden to provide the Service with the necessary "substantial scientific or commercial information." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b).

Where such a 90-Day Finding agrees with the petition, the Secretary must undertake a status review of the species and, within one year, issue a "12-month Finding" concluding whether the petition is warranted, not warranted, or warranted but precluded. 16 U.S.C. § 1533(b)(3)(B). Where, as here, the 90-Day Finding is negative as to the petition's request, the listing or delisting process is at an end and the aggrieved party may seek judicial review of the Secretary's decision. 16 U.S.C. § 1533(b)(3)(C)(ii).

Here, Western Watersheds filed a Petition seeking an ESA listing of the Pygmy Rabbit (*Brachylagus idahoensis*) as a threatened or endangered species. (AR 1841). The Service's 90-Day Finding denied the Petition finding that it failed to provide substantial

---

[2] An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A "threatened species" is "any species that is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

[3] The term "Secretary" can refers to either the Secretary of the Interior or the Secretary of Commerce depending on the species in question; in this case the Secretary of the Interior has jurisdiction.

information that the geographic range of the species is declining from its historical range and that any habitat losses have occurred in areas where Pygmy Rabbits are found. (AR 004-005). Western Watersheds challenges the Finding alleging the Service misapplied the legal standards of the ESA by: 1) imposing a higher standard for scientific information by requiring conclusive scientific proof; 2) improperly considering the threats facing the Pygmy Rabbit; 3) failing to consider whether the population was threatened or endangered over a significant portion of its range; and 4) unlawfully soliciting information from third-parties and relying on the same in denying the Petition. (Dkt. No. 25, p. 3). The Service counters that it considered the relevant factors and applied the appropriate standards when rendering its Finding. (Dkt. No. 28). The Service also contends that it correctly evaluated the range and that its "outreach" for additional information was proper.

## I.     **Standard for Listing Petitions & Evaluation of Threats to the Pygmy Rabbit**

In making its determination on whether a species is eligible for protection, the Service considers whether the petition has presented substantial evidence or information that one or more of five statutorily defined factors may be present:

> (A)   the present or threatened destruction, modification, or curtailment of [the species'] habitat or range;
> (B)   overutilization for commercial, recreational, scientific, or educational purposes;
> (C)   disease or predation;
> (D)   the inadequacy of existing regulatory mechanisms;
> (E)   other natural or manmade factors affecting [the species] continued existence.

16 U.S.C. § 1533(a)(1). Here, the Petition asserts that each of the five factors are present and warrant listing of the Pygmy Rabbit. The parties dispute on review centers on the first "threat" factor.

In conducting its threats analysis of present or threatened destruction, modification, or curtailment of the species' habitat or range, the Service made an initial determination that

the Petition failed to provide any data indicating a reduction in Pygmy Rabbit's habitat range from historical levels; questioning the Petition's visual comparison of two range maps and the state-by-state analysis. (AR 004). The failure to demonstrate a reduction in range is particularly true, the Service argues, because Pygmy Rabbits are not evenly distributed over the entire range but are instead discontinuous and "occur in widely scattered and/or isolated clumps across the landscape." (AR 003-004). After reaching this conclusion, the Finding discusses the Petition's arguments on each of the threats and then repeats that the Petition does not:

> provide substantial information that clearly documents that the areas where these habitat losses have occurred are also the areas where pygmy rabbits are found. Also, the petition does not present substantial information on the magnitude and extent of loss of habitat due to [agriculture, sagebrush conversion, livestock grazing, etc...][4] such that we can conclude that the continued existence of the pygmy rabbit throughout all or a significant portion of its range may be threatened.

(AR 005-006). This conclusion is the common thread throughout the Finding. (AR 004). Western Watersheds argues the Service improperly imposed a higher standard for scientific and commercial information; asserting "conclusive" proof is not required at this stage of the listing process and that the Petition's information should be presumed reliable unless the Service has evidence to the contrary in its files. (Dkt. No. 25, p. 14-15). The Service agrees with this standard but argues that it did not question the reliability of the data cited in the Petition but instead determined that the data did not adequately support the Petition's position as they were "collected for a purpose or in a manner different from the way in which the Plaintiffs try to use them." (Dkt. Nos. 28, pp. 13-14; 34, p. 3). Stated differently, the Service maintains that "the reliability of the information in the Petition is a separate issue

---

[4] The conclusions in the Finding vary slightly between each section as they are somewhat tailored to the particular threat the Finding is addressing. Regardless, the substance of the conclusions in each section remains the same.

from whether the information presents 'adequate...information...that would lead a reasonable person to believe the petition action may be warranted.'" (Dkt. No. 34, p. 2) (citing AR 2128; 50 C.F.R. § 424.14(b)(2)(ii)). The Court disagrees with the Service as its position is contradicted by the language of the Finding.

The Service's argument is raised in its response brief which cites as its support not to language in the Finding, but to its Petition Management Guidance ("PMG"). (AR 2118, 2128). Though the PMG may very well state the Service's policy for reviewing a 90-Day Listing Petition, the language of the Finding issued in this case does not articulate that such a review occurred.[5] In making its initial determination, upon which the rest of the Finding's conclusions are based, the Service questioned the information presented in the Petition stating:

> The data and information presented in the petition has limited use in determining rangewide distribution and abundance of the species. Little detail is available from records prior to 1950. These records may not accurately reflect the species' historic distribution because they were not collected in a systematic, comprehensive manner with the goal of determining species distribution and abundance. They represent a collection of sightings documented through various methods by different individuals over time. Recent surveys (post-1950) have not been comprehensive in any State within the pygmy rabbit's range. Consistent methodologies were not used for those previous surveys. Definitions for historic sites versus previously known sites, methods for determining occupancy, and definitions that would clearly distinguish occupied from unoccupied areas, unoccupied suitable habitat, and the extent of occupied or formerly occupied population sites, are inconsistent.

(AR 004). The Finding goes on to point out the shortcomings of the surveys and data cited in the Petition. This dialog discussing the inadequacies of the evidence and information relied on by the Petition makes it clear that the Service did in fact dispute the reliability of the information offered in the Petition. Though Petition cited to multiple sources

---

[5] The Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Defenders, 258 F.3d at 1146 n. 12 (Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

acknowledging losses of Pygmy Rabbit habitat and populations which the Finding noted in its decision, the Finding concluded that the sources are of "limited use" or lack "accuracy" stating: "The data and information presented in the petition has limited use in determining rangewide distribution and abundance of the species. Little detail is available from records...[t]hese records may not accurately reflect the species' historic distribution because they were not collected in a systematic, comprehensive manner..." and "we are unaware of any accurate, comprehensive inventories of currently occupied pygmy rabbit habitat for any state within the range of the species." (AR 004). Such information, the Service noted, is critical information "to any analysis of range and/or population reductions" and the lack of such information renders the Petition deficient. (AR 004). This language reflects that the Service disputed the accuracy and reliability of the evidence and information offered in the Petition as to habitat and population loss. On that basis, the Finding determined the Petition did not present substantial information to indicate that listing may be warranted. The strength of these statements demonstrates that the denial of the Petition was not for lack of "substantial information" but for failure to provide more accurate evidence of the species' range and a reduction of population or habitat range of the species.

What is required at this stage of the listing process, however, is a review of the Petition for a determination of whether it presents substantial information indicating to a reasonable person that the petitioned action may be warranted. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b); see also Moden v. United States Fish and Wildlife, et. al., 281 F.Supp.2d 1193, 1204 (D.Or. 2003). This standard is in "contrast to the 'best scientific and commercial data' standard applied to actually listing a species..." and does not require "conclusive evidence." Id. at 1202-03; see also Center for Biological Diversity v. Morgenweck, 351 F.Supp.2d 1137, 1141 (D. Col. 2004). In making this determination the

Service is directed to consider:

> (2) ... whether such petition–
>
> (I)   Clearly indicates the administrative measure recommended and gives the scientific and any common name of the species involved;
> (ii)  Contains detailed narrative justification for the recommended measure, describing, based on available information, past and present numbers and distribution of the species involved and any threats faced by the species;
> (iii) Provides information regarding the status of the species over all or a significant portion of its range; and
> (iv)  Is accompanied by appropriate supporting documentation in the form of bibliographic references, reprints of pertinent publications, copies of reports or letters from authorities, and maps.
>
> The petitioner may provide information that describes any recommended critical habitat as to boundaries and physical features, and indicates any benefits and/or adverse effects on the species that would result from such designation. Such information, however, will not be a basis for the determination of the substantiality of a petition.

50 C.F.R. § 424.12. The Service recognized this standard in a separately issued 90-Day Finding stating its review "is limited to a determination of whether the information in the petition meets the 'substantial information' threshold. We do not conduct additional research at this point, nor do we subject the petition to rigorous critical review. Rather, as the Act and regulations contemplate, at the 90-day finding, we accept the petitioner's sources and characterizations of the information unless we have specific information to the contrary." Colorado River, 448 F.Supp.2d at 176 n. 4 (citing to the Service's Finding on Petition to Delist the Ute Ladies' – Tresses Orchid at 69 Fed. Reg. 60605-06 (Oct. 12, 2004)).[6]

---

[6] The Court notes this language made in a different unrelated Finding because both parties reference the language in their briefing here. See e.g. (Dkt. No. 28, p. 14).

The Court finds the Service improperly imposed a higher standard when it reviewed the Petition in this matter and, therefore, its denial of the Petition was contrary to law. In reaching this conclusion, the Court has been careful to not second guess the Service's findings or otherwise infringe on its discretion. The Court is well aware of its standard of review in these matters and has afforded the Service its due discretion. After having conducting a "searching and careful" review of the Finding in this case, however, the Court finds that the Service demanded a higher standard from the Petition than is required at this stage of the listing process. Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989).

The Finding's outcome hinges on its initial conclusion that "the Petition fails to connect – or present data that would allow the Service to connect – sagebrush loss with actual pygmy rabbit habitat loss" because "not all sagebrush habitat is pygmy rabbit habitat." (Dkt. No. 34, p. 3). Pointing to the fact that the Pygmy Rabbit is "not distributed uniformly across the full range of the sagebrush ecosystem" and the Petition's data provided only "general characterizations of sagebrush habitat loss" but not "substantial information that clearly documents that the areas where these habitat losses have occurred are also the areas where pygmy rabbits are found." (Dkt. No. 34, p. 3) (citing AR 005-006).

Though the Court does not necessarily disagree with the result of the Finding, because the denial of the Petition was based on the application of a higher standard in reaching this conclusion, the Court finds the Service acted arbitrary, capricious, and contrary to the applicable law. See Center for Biological Diversity, 351 F.Supp.2d. At 1142 ("This is not to say that the [Service] must blindly accept statements in petitions that constitute unscientific data or conclusions...."). Accordingly, the Court will grant Western Watershed's motion for summary judgment and reverse the Service's Finding and remand the matter to

the Service to issue a new finding within ninety days of this order.[7]

## II. **Consideration of the Species Over a Significant Portion of its Range**

Western Watersheds also argues that the Service failed to consider the status of the Pygmy Rabbit across a significant portion of its range as required by the ESA. In support of this argument, Western Watersheds cites to Defenders of Wildlife v. Norton, 258 F.3d 1136 (9th Cir. 2001) where the court there held that the Service was required to address whether the species in question was extinct throughout a significant portion of its historical range.

The facts of this case are distinct from those in Defenders. In Defenders the court concluded that "a species can be extinct 'throughout .. a significant portion of its range' if there are major geographical areas in which it is no longer viable but once was." 258 F.3d at 1145. Here, the Service never reached this question as it had concluded that the Petition did not show a decline in range nor a link between the loss of habitat and loss of population or a loss of habitat where Pygmy Rabbits are actually found. Thus the fact that the significant portion of the range was not examined is not error at this stage of these proceedings. However, the Court has determined above that the Service's finding regarding the habitat loss and geographic range were arbitrary and capricious. Accordingly, if necessary based on the Service's findings on remand, the Service is directed to consider this factor as directed in Defenders. Defenders, 258 F.3d at 1145 ("the Secretary must at least explain her conclusion that the area in which the species can no longer live is not a 'significant portion of its range.'").

---

[7] Because the Petition has been submitted and the Service has already considered the same previously, there is no reason to delay the issuance of a new Finding on the Petition.

### III.     **Solicitation of Third-Party Opinions**

The ESA expressly limits the Service to reviewing the information presented in the Petition and the information contained in the Service's files. See 16 U.S.C. § 1533(b)(3)(A). Western Watersheds argues the Service improperly relied on information solicited from third-parties including various state wildlife agencies and tribal governments; particularly because the public was given no notice nor opportunity to respond to the information submitted by the third parties. (Dkt. No. 25, p. 19). The Service counters that it properly conducted "outreach" in an effort to analyze all information "available" to the Service; maintaining that information is "available" if it is "information contained in the petition, information in Service files, or information that is contained in readily available reference sources." (Dkt. No. 28, p. 18) (citing AR 2126-27). Here, the Service argues, it made a "generalized, broadcast request to a public email list server...and received information of a generic, referential nature in response" and sent letters to state and tribal governments requesting "any information relating to the status of the pygmy rabbit." (Dkt. No. 28, p. 19) (AR 1746, 1746, 1522).[8]

In support of its challenge, Western Watersheds cites to two recent district court opinions Colorado River Cutthroat Trout v. Dirk Kempthorne, 448 F.Supp.2d 170, 175-76 (D.D.C. 2006) and Center for Biological Diversity v. Morgenweck, 351 F.Supp.2d 1137 (D. Colo. 2004). In both of those cases the district courts determined that while engaging in its

---

[8]

The email request was made to a general Pygmy Rabbit list service notifying its members of the pending Petition and seeking completed reports or other documents on status and distribution; noting such information needs to be in the Service's files prior to the issuance of the 90-Day Finding or it cannot be considered. (AR 1746). The letter sent to tribal governments made a similar request for information. (AR 1552). The second email was sent to various state hunting agencies asked a set of five questions regarding the hunting rules for Pygmy Rabbits in each state. This email begins by noting the request is made "As part of my preparation of the pygmy rabbit 90-day finding." (AR 1330).

MEMORANDUM ORDER
07ORDERS\WesternWatersheds_06-127

review of plaintiffs' petition at the 90-day stage the Service improperly solicited opinions from state and federal agencies and relied upon those solicited opinions in denying the petitions. Those courts reasoned that by considering information outside of the four corners of the petitions impermissibly expanded the scope of the 90-day review noting that the Service's obligation at the 90-Day stage is "to make a threshold determination as to 'whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.'" Colorado River, 448 F.Supp.2d at 176 (citing 16 U.S.C. § 1533(b)(3)(A)); 50 C.F.R. § 424.14(b)(1)). "It does not authorize the [Service] to weigh the information provided in the petition against information selectively solicited from third parties. The [Service] simply cannot bypass the initial 90-day review and proceed to what is effectively a 12-month status review, but without the required notice and the opportunity for public comment." Id. "[P]etitions that are meritorious on their face should not be subject to refutation by information and views provided by selected third-parties solicited by [the Service]." Morgenweck, 351 F.Supp.2d at 1143 (citing 16 U.S.C. § 1533(b)(3)(A) (if "petition presents substantial scientific or commercial information that the petitioned action may be warranted ... the Secretary shall promptly commence a review of the status of the species concerned.")).

This Court finds the reasoning of both of these cases, while not binding, is persuasive. It was improper for the Service to make these "outreach" efforts. Colorado River, 448 F.Supp.2d at 177 ("Both the statute setting forth the 90-day review requirements, 16 U.S.C. § 1533(b)(3)(B), and its implementing regulation, 50 C.F.R. § 424.14(b), make plain that the 90-day review is to be based on the petition alone or in combination with the [Services] own records."). The statutory purpose at the 90-Day stage is to render a threshold determination of whether the petition has offered substantial scientific or commercial information

indicating that the requested action may be warranted.  See 16 U.S.C. § 1533(b)(3)(A).  The Finding itself states "We are to base this finding on information provided in the petition" and "In making this finding, we relied on information provided by the petitioners and evaluated that information in accordance with 50 CFR 424.14(b)."  (AR 001).  The Service points to its PMG to support its argument that it was simply trying to gather "all information available" to it.  (AR 2126-2127).  Thus, the Service states that its actions were akin to a quick trip to the library.

The Court disagrees.[9]  The facts of this case are similar to those in Colorado River and Morgenweck.  In both of those cases the Service made several inquiries from multiple agencies in making its 90-Day determination.[10]  Here, too the Service made several inquiries soliciting information relating to the Pygmy Rabbit.  The solicitations were made after the Petition had been filed and specifically to assist the Service in its preparation of the 90-Day Finding.  While the Service may not have engaged in the kind of "a targeted information campaign" deemed improper in Morgenweck, the Service's rational explaining its conduct here stretches the ESA's limitations for a 90-Day Finding stage review.  To deem the information sought here as "readily available reference sources" would allow the Service to go beyond the express precepts of the ESA which limits the Service to reviewing the information presented in the Petition and the information contained in the Service's files.  See 16 U.S.C. § 1533(b)(3)(A).  While the Court appreciates the efforts of the Service to compile a complete and accurate 90-Day Finding, seeking additional information at this

---

[9] In Colorado River, the Court rejected a similar argument made by the Service regarding the PMG as providing a basis for the Service's of reviewing all "available" information in its files as encompassing the types of solicitations for information made here.  448 F.Supp.2d at 177.

[10] The Court acknowledges that the inquiries made here are different from those in the other cases cited in that the Service here did not ask for opinions on the 90-Day Finding but sought information on Pygmy Rabbits to assist in its preparation of the 90-Day Finding.

stage is precluded by the ESA. As the Courts in Colorado River and Morgenweck noted, the "threshold determination as to 'whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted'...does not authorize the [Service] to weigh the information provided in the petition against information selectively solicited from third parties" and thus converting the "90-day review and process to what is effectively a 12-month status review, but without the required notice and the opportunity for the public to comment." Colorado River, 448 F.Supp.2d at 176 (citations omitted). As such, the Court finds the Service's requests for information were improper.

However, because the Finding did not cite to any of the sources nor seemingly obtain any viable information from its requests then, presumably, it did not rely on such sources. Thus, there has been no prejudice to the Petitioners and the Court does not reverse the Finding upon this basis.

**IV.    Conclusion**

Having found the Service to have violated the mandates of Section 4(b)(3)(A) of the ESA, 16 U.S.C. § 1533(b)(3), the Court has discretion to fashion appropriate relief. Colorado River, 448 F.Supp.2d at 177 (quoting Defenders, 239 F.Supp.2d at 25) ("Congress did not limit district courts' authority to provide equitable relief under the ESA, and indeed, specifically reserved their traditional authority to fashion appropriate equitable relief."); see also 16 U.S.C. § 1540(g)(5) ("[t]he injunctive relief provided by this subsection shall not restrict any right which any person (or class of persons) may have ... to seek any other relief (including relief against the Secretary ...")). Western Watersheds asks the Court to reverse the Service's 90-Day Finding and order it to complete a full status review and findings as to listing of the Pygmy Rabbit. The Service argues such relief exceeds the Court's jurisdiction on review and that the proper remedy, if any, would be to remand the

determination to allow the agency to exercise its discretion to reconsider the 90-Day Finding.

The Court finds that ordering a full status review is not appropriate in this case. While the Service did seek information beyond the material in the Petition, it does not appear it actually received any substantive information such that it had effectively began to conduct a status review. See Colorado River, 448 F.Supp.2d at 177, Morgenweck, 351 F.Supp.2d at 1144 (ordering defendants to complete a full status review after finding that its 90-day review was over inclusive because it went beyond the review mandate). Further, the Court took great pains to not second guess the Service's findings and, as a result, makes no finding here as to whether the Petition should be granted or denied. That determination is appropriately left to the Service. Accordingly, the Court directs the Service to issue a new 90-Day Finding within ninety days of the issuance of this order.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court HEREBY ORDERS as follows:

1) Plaintiff's Motion for Summary Judgment (Dkt. No. 25) is **GRANTED**. The Service's 90-Day Finding is reversed and the matter is REMANDED to the Service for preparation of a new 90-Day Finding. Such finding shall be issued within ninety (90) days of the issuance of this order.

2) Defendants' Cross-Motion for Summary Judgment (Dkt. No. 27) is **DENIED**.

DATED: **September 26, 2007**

Honorable Edward J. Lodge
U. S. District Judge